# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| MELVA YVONNE JOHNSON, | * |
| v. | * Civil Case No. GLR-17-1587 |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | * |

## REPORT AND RECOMMENDATIONS

Pursuant to Standing Order 2014–01, the above-captioned case has been referred to me to review the parties' dispositive motions and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). [ECF No. 4]. Plaintiff Melva Yvonne Johnson, who proceeds *pro se*, filed this appeal of the denial of her claim for benefits by the Social Security Administration ("the Commissioner"). [ECF No. 1]. The Commissioner filed a Motion for Summary Judgment on December 18, 2017. [ECF No. 14]. On December 19, 2017, the Clerk's Office sent a Rule 12/56 letter to Ms. Johnson, advising her of the potential consequences of failing to oppose the Commissioner's Motion. [ECF No. 15]. Ms. Johnson has not filed a response. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated below, I recommend that the Court deny the Commissioner's Motion, reverse the Commissioner's decision in part, and remand the case to the Commissioner for further proceedings in accordance with this report and recommendations.

On April 3, 2013, Ms. Johnson protectively filed for Supplemental Security Income ("SSI"), alleging a disability onset date of March 12, 2009. (Tr. 153-58). Her claim was denied initially and on reconsideration. (Tr. 74-83, 86-100). On March 18, 2016, an Administrative

Law Judge ("ALJ") held a hearing, at which Ms. Johnson was represented. (Tr. 29-73). Following the hearing, the ALJ issued an unfavorable decision on April 25, 2016. (Tr. 8-27). The Appeals Council denied Ms. Johnson's request for further review, (Tr. 1-5), so the ALJ's decision constituted the final, reviewable decision of the Agency.

The ALJ found that, during the relevant time frame, Ms. Johnson suffered from the severe impairments of "right shoulder bursitis; possible partial tears of supraspinatus and subscapularis tendons (severe in combination); bipolar disorder; [and] post-traumatic stress disorder." (Tr. 13). Despite these impairments, the ALJ determined that Ms. Johnson retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 416.967(b) except she is able to sit for four hours and stand or walk for four hours during the workday; she can occasionally climb ramps or stairs but never climb ladders, ropes, or scaffolds; she can occasionally stoop or crouch but never kneel or crawl; she can occasionally reach overhead bilaterally; she is limited to simple, routine tasks with occasional public contact; she requires a sit/stand option at thirty minute intervals.

(Tr. 16). After considering testimony from a vocational expert ("VE"), the ALJ determined that there were several jobs existing in significant numbers in the national economy that Ms. Johnson could perform. (Tr. 21-22). Thus, the ALJ concluded that Ms. Johnson was not disabled. (Tr. 22).

I have carefully reviewed the ALJ's opinion and the entire record. *See Elam v. Barnhart*, 386 F. Supp. 2d 746, 753 (E.D. Tex. 2005) (mapping an analytical framework for judicial review of a *pro se* action challenging an adverse administrative decision, including: (1) examining whether the Commissioner's decision generally comports with regulations, (2) reviewing the ALJ's critical findings for compliance with the law, and (3) determining from the evidentiary record whether substantial evidence supports the ALJ's findings). For the reasons described

below, while substantial evidence supports some portions of the ALJ's decision, the ALJ's analysis is otherwise deficient. Accordingly, I recommend remand.

At step one, the ALJ found in Ms. Johnson's favor, concluding that she had not engaged in substantial gainful activity since her application date. (Tr. 13). At step two, the ALJ found the above-listed severe impairments, and found that any other alleged impairments—including chronic obstructive pulmonary disorder ("COPD"), back and knee pain, and drug abuse—were not severe. (Tr. 13-14).

At step three, the ALJ determined that Ms. Johnson did not have an impairment or combination of impairments that met or medically equaled the criteria set forth in any listings. (Tr. 14-16). First, the ALJ determined that Ms. Johnson's impairments did not meet Listing 1.02, because:

> these conditions are not characterized by gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of motion and findings of joint space narrowing, bony, destruction, or ankylosis of the joints with involvement of: A. a major peripheral weight-bearing joint or B. a major peripheral joint in each upper extremity.

(Tr. 14). Additionally, the ALJ found that Ms. Johnson's mental impairments did not meet or medically equal Listings 12.04, 12.06, or 12.09. (Tr. 14-16). In applying the special technique for consideration of mental impairments, the ALJ concluded that Ms. Johnson had "mild" restriction in daily living activities, and "moderate" difficulties in social functioning and concentration, persistence, or pace. (Tr. 14-15). The ALJ further found that Ms. Johnson had experienced no episodes of decompensation. (Tr. 15).

In determining the RFC assessment, the ALJ summarized Ms. Johnson's allegations about her inability to work, and found that Ms. Johnson's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical

3

evidence and other evidence in the record . . . ." (Tr. 16-17). In particular, the ALJ analyzed the medical evidence from testing, treatment notes, and consultative examinations, as well as Ms. Johnson's own statements and daily activities. (Tr. 17-18). The ALJ assigned "little" weight to the medical opinions of Ms. Johnson's treating source, Dr. Laverdis Davis, after noting that the opinion was "not supported by the overall record" and "inconsistent with Dr. Davis's own treatment records . . . ." (Tr. 19). The ALJ also accorded "little" weight to the medical opinions of Ms. Johnson's treating psychologist, Dr. George Leary, after determining that his medical opinions were "unsupported by the evidence of record" and Ms. Johnson's daily activities. (Tr. 19-20). Meanwhile, the ALJ assigned "partial" weight to the opinions of consultative examinations, Drs. Varsha Vaidya and Mariflor Suarez-Jamora, but accounted for additional social limitations in the RFC assessment. (Tr. 20). The ALJ accorded "great" weight to State agency medical and psychological consultants, and consultative examiner, Dr. Lawrence Honick, after finding that their opinions were consistent and well supported by the evidence in the record. (Tr. 19-20). Finally, the ALJ gave "little" weight to Ms. Johnson's GAF scores, ranging between 35 and 60. (Tr. 20-21).

Continuing at step four, the ALJ found that Ms. Johnson had no past relevant work. (Tr. 21). At step five, the ALJ posed hypotheticals to the VE to determine whether a person with each set of hypothetical criteria would be able to find work. (Tr. 21-22). Ultimately, the ALJ determined that Ms. Johnson's RFC matched one of the hypotheticals she posed. (Tr. 21-22). The VE cited several jobs in response to that hypothetical, including "Inspector," "Packer," and "Mail clerk," and the ALJ relied on that VE testimony in her opinion. *See id.*

The function of this Court is not to review Ms. Johnson's claim *de novo* or to reweigh the evidence of record. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986) (citing

42 U.S.C. § 405(g) and *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972)). Rather, this Court must determine whether, upon review of the whole record, the Commissioner's decision is supported by substantial evidence and a proper application of the law. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also* 42 U.S.C. § 405(g). I find that the ALJ's decision does not comport with the Fourth Circuit's holding in *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015), and that remand is, therefore, required. In remanding for additional explanation, I express no opinion as to whether the ALJ's ultimate conclusion that Ms. Johnson is not entitled to benefits is correct.

In *Mascio*, the Fourth Circuit determined that remand was warranted for several reasons, including a discrepancy between the ALJ's finding at step three concerning the claimant's limitation in concentration, persistence, and pace, and his RFC assessment. 780 F.3d at 638. At step three of the sequential evaluation, the ALJ determines whether a claimant's impairments meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Listings 12.00 *et seq*. pertain to mental impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00. Most listings therein consist of: (1) a brief statement describing its subject disorder; (2) "paragraph A criteria," which consists of a set of medical findings; and (3) "paragraph B criteria," which consists of a set of impairment-related functional limitations. *Id.* § 12.00(A). If both the paragraph A criteria and the paragraph B criteria are satisfied, the ALJ will determine that the claimant meets the listed impairment. *Id.*

Paragraph B consists of four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. The ALJ employs the "special technique" to rate a claimant's degree of limitation in each area, based on the extent to which the claimant's impairment "interferes with [the claimant's] ability

to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § 404.1520a(c)(2). The ALJ uses a five-point scale to rate a claimant's degree of limitation in the first three areas: none, mild, moderate, marked, or extreme. *Id.*; *see* 20 C.F.R. § 404.1520a(c)(4). To satisfy paragraph B, a claimant must exhibit either "marked" limitations in two of the first three areas, or "marked" limitation in one of the first three areas, along with repeated episodes of decompensation. *See, e.g.*, 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.02. Marked limitations "may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with your ability to function." *Id.* § 12.00(C).

The functional area of "[c]oncentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." *Id.* § 12.00(C)(3). Social Security regulations do not define marked limitations in concentration, persistence, or pace "by a specific number of tasks that [a claimant is] unable to complete." *Id.* The regulations, however, offer little guidance on the meaning of "moderate" limitations.

The Fourth Circuit remanded *Mascio* because the hypothetical the ALJ posed to the VE—and the corresponding RFC assessment—did not include any mental limitations other than unskilled work, despite the fact that, at step three of the sequential evaluation, the ALJ determined that the claimant had moderate difficulties in maintaining concentration, persistence, or pace. 780 F.3d at 637-38. The Fourth Circuit specifically held that it "agree[s] with other circuits that an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." *Id.* at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)) (internal

6

quotation marks omitted). In so holding, the Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id*. Although the Fourth Circuit noted that the ALJ's error might have been cured by an explanation as to why the claimant's moderate difficulties in concentration, persistence, or pace did not translate into a limitation in the claimant's RFC, it held that, absent such an explanation, remand was necessary. *Id*.

In the instant case, the ALJ found that Ms. Johnson had "moderate difficulties" in concentration, persistence, or pace. (Tr. 15). In so finding, the ALJ explained:

> The claimant stated that she can pay attention for only 15 to 20 minutes at a time and that she has difficulty following written and spoken instructions on occasion. In addition, she endorsed difficulty handling stress or changes in routine. The treating evidence shows that the claimant did indeed subjectively report concentration difficulties and memory loss. However, during the consultative examination, Dr. Vaidya noted that the claimant could spell WORLD backwards, repeat a sentence, perform complex task, recall 2 out of 3 objects after a three-minute delay, and perform well on the abstract thinking test. Treating records also frequently show that the claimant has intact attention and memory. Therefore, I find that the claimant has no more than moderate difficulties in this area.

*Id.* (internal citations omitted). The ALJ further noted that, despite Ms. Johnson's continued complaints of "crying spells, lack of concentration, poor sleep, fatigue, irritability, and social isolation," the medical evidence revealed "coherent thought process, intact attention and memory, and good insight and judgment." (Tr. 18). In addition, the ALJ assigned "great" weight to the medical opinions of the State agency psychological consultants, who found that Ms. Johnson was "capable of performing simple, routine tasks with added limitations in [her] interactions with the general public." (Tr. 20). The ALJ, however, did not address the State agency psychological consultant's opinion that Ms. Johnson was "[m]oderately limited" in her

7

ability to maintain attention and concentration for extended periods. *See* (Tr. 97) ("Limitations reported in terms of concentration and focus that would influence performance during the course of a workweek. . . . She will have some difficulty concentrating for extended time periods, but only occasionally, as long as she continues to refrain from serious substance abuse.").

According to 20 CFR § 404.1520a(c)(2), the rating of "moderate difficulties" is supposed to represent the result of application of the following technique:

> We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function.

20 CFR § 404.1520a(c)(2). Once the technique has been applied, the ALJ is supposed to include the results in the opinion as follows:

> At the administrative law judge hearing and Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

*Id.* § 404.1520a(e)(4). The analysis provided by the ALJ in the instant case fails to fulfill these requirements. Without further explanation, I am unable to ascertain whether the ALJ truly believed Ms. Johnson had moderate difficulties in concentration, persistence, or pace, instead of mild or no difficulties, and how those difficulties restrict her RFC to "simple, routine tasks with occasional public contact." (Tr. 16). Indeed, the ALJ's analysis entirely fails to address Ms. Johnson's pace or ability to sustain work over an eight-hour workday. In light of this inadequacy, I must remand the case to the Commissioner for further analysis consistent with the Fourth Circuit's mandate in *Mascio*. On remand, the ALJ should consider the appropriate level

of limitation in the area of concentration, persistence, or pace, and, if the ALJ finds moderate limitation again, should explain her finding to permit an adequate evaluation under the dictates of *Mascio*.

Additionally, although perhaps not an independent basis for remand, I further note that the ALJ's listing analysis was limited. In particular, the ALJ identified Listing 1.02 as potentially applicable to Ms. Johnson's case, but then provided no analysis except a conclusory assertion that none of the enumerated criteria of that listing had been satisfied. (Tr. 14). On remand, the ALJ should consider whether further analysis, with citations to the medical evidence, is warranted.

**CONCLUSION**

For the reasons set forth above, I respectfully recommend that the Court DENY Defendant's Motion for Summary Judgment, [ECF No. 14]; REVERSE IN PART the decision of the Commissioner; REMAND the case to the Commissioner under sentence four of 42 U.S.C. § 405(g) for further proceedings in accordance with this Report and Recommendations; and order the Clerk to CLOSE this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Federal Rule of Civil Procedure 72(b)(2) and Local Rule 301.5(b).

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from

challenging on appeal the findings and conclusions accepted and adopted by the District Judge, except upon grounds of plain error.

Dated: February 5, 2018                                       /s/
                                                    Stephanie A. Gallagher
                                                    United States Magistrate Judge